Good afternoon. Illinois Public Court First District is now in session. The Sixth Division, the Honorable Justice Michael B. Hyman presiding. Case number 22-1169, Zorlazano v. Jason Magnami, M.D. Good afternoon. First of all, I apologize. We're having some technical difficulties. That's why we're a little late. I apologize for that. I'm Justice Michael Hyman. With me is our presiding judge, Sharon Johnson, and Justice Sanjay Taylor. I see three individuals. Is everyone in the picture going to speak or not? Your Honor, my name is Michael Tannen, and I represent the plaintiff appellant. My associate, Tim Malloy, is here, and I believe the plaintiff, Shaina Zorlazano, is here, and my co-counsel, John Kelly, but I'm the only one who's going to be arguing. Mr. Kelly, if you could. Yes, thank you very much. Okay. And how much time do you wish to reserve for rebuttal? Well, for rebuttal, 20 minutes for oral argument in the first instance and 10 minutes for rebuttal. You only get 20 altogether. Pardon? You have 20 minutes altogether. 15 for the opening argument and 5 for rebuttal. Okay, thank you. Ms. Green? Good afternoon. I'm Ellen Green for the Appalooie West Suburban Medical Center. We anticipate about 15 minutes. Okay, thank you very much. We conduct ourselves as if we were in court. We'll probably interrupt you at some times. That's because the give and take of the process, and we will begin. Mr. Tannen? Thank you very much. May it please the court. My name is Michael Tannen, and I represent plaintiff appellant, Shana Solarzano, along with John Kelly in this case. Shana is here to observe, and we are very grateful that you chose our case today for discussion. Before I begin with my substantive points, I'd like to posit a few preliminary observations. First, having practiced law since 1990, I've learned that the development of the law, the common law, is very organic. The law is born, it develops, it grows, it contracts, it grows some more, and this process can be readily seen with the development of apparent agency liability in the medical malpractice arena. When we look at this organic development of apparent agency law, I think Shana's claim that Dr. Romano was an apparent agent of West Sub falls squarely within well-established apparent agency law. As we know, before 1993, apparent agency didn't exist. In 1993, Gilbert recognized that it can be applied to the ER context. In 1999, in Petrovich, the apparent agency was extended to HMOs, 2006 in York. Let me ask a question. Yes. In your opening brief, you talk about purported agent test, and the defendant says there's no such thing as a purported agent test. And you don't respond to that, I don't believe. I didn't see any response. Well, in our reply brief, we argued that we felt that our entire analysis complies with the Gilbert test, and the agent is Romano. What is this purported? I mean, what does the word purport, why did you use that term? I don't know why I didn't. I don't know why I use that word. I didn't use it repeatedly. And I focused on Romano throughout the entirety of my brief. And we believe that every portion of our brief and every portion of our argument and every portion of our statement of facts tracks Gilbert to the letter. So when they say plaintiff asserts a purported agent test adopted in Gilbert, you're saying you're not talking about a purported agent? I'm not talking about a purported agent. I'm talking about Dr. Romano, period, as the, when I say purported, he's the claimed apparent agent. We believe he is an apparent agent of West Sub. If I may, I continue. Yeah, yeah. Okay. So, in 2006, the Illinois Supreme Court embraced the lower reasonable reliance standard. And then finally, and I think this is a very important case. In terms of contrast, and Yarrowboro, the Illinois Supreme Court put the brakes on a parent agency and didn't apply it to a freestanding federally funded clinic. My second point is that from the very beginning in 1993 until today. In determining whether a parent agency liability exists, the courts have looked at the acts of the hospital and the agent. And the trial court did not look at any aspect of the agent's conduct in this case. Third, Shaina's request in this case is humble. We're not required to prove our case at this point. We want to get to a jury. We believe there are numerous questions of fact. And that's all we ask. We're not trying our case before this court. Finally, Shaina is not required to cross-examine her health care providers about their relationship with a hospital. The burden is on the health care providers. She can't be a potted plant. She does have to read signs. She does have to pay attention to signs. She does have to read forms. But according to Gilbert, unless the patient is put on, in some manner, on notice of the independent status of the professionals with whom it might be expected to come into contact, it's natural for her to assume that these people are agents of the hospital. So those are my four preliminary points. I want to spend a moment talking about the connections between Romano's treatment and West Sub's treatment. The x-rays prior to her visit were taken at West Suburban before her appointment with Romano. They were interpreted at West Sub by a West Sub employee. This is an important point. Dr. Romano had automatic access to radiology records and could automatically copy and paste. We have the facts. We've read the briefs, read the record. There's several arguments you make as to why we should reverse. Of all those arguments, what do you say is the one that, of all the others, is your best argument? You have several. You may say they're all good, and I'm not saying they're not. Which one would be your strongest? I wonder to myself why this case was chosen for oral argument, and I'm believing it could be the, in our view, utter inadequacy of the treatment of consent form given by Dr. Romano to Shana Solorzano. There is no case. The fact that this consent form had no reference whatever to the hospital, that's you're saying the form itself is your best argument? And in your brief, you even rewrite the form and say, well, this would have been fine, but this isn't the form that was given. Correct. She only signed one consent form. She didn't sign a separate form for a second visit. West Subs mentioned nowhere. The relationship with West Sub is not described. There's no disclaimer whatsoever. There's no acknowledgment that she understood what she was signing. There's no disclaimer of reliance. And it's interesting, as I said, she had to consent for Romano to review her prescription records. But you contrast this with his automatic access to West Sub records. She brought her own x-rays from Texas to Dr. Romano. All the cases that we cite in our table show that these types of forms are very important. Sometimes they're almost dispositive. When a form is, when a consent form clearly and unambiguously disclaims an employer-employee relationship, summary judgment is proper. We have those cases. Gilbert, Scardina, Cain, McGorry, Schroeder, Williams. When a form is confusing about the relationship between a doctor and a hospital, summary judgment is denied or reversed on appeal. This consent form wasn't confusing. It clearly said that she was consenting to being serviced by Romano Orthopedics LLC. There's nothing confusing about that. I think it's confusing in the context that from the minute she left her car to the minute she wound up in his office, everything she saw, everything she heard told her that it was West Sub and not Romano Orthopedics. This consent form was the last chance for the relationship between West Sub and Dr. Romano to be disclaimed, explained, and disclosed. And I want to compare for a moment. Dr. Cannon, I want to pick up on that. You used the snow globe as an analogy. Pardon? You used the snow globe as an analogy, and I wanted to ask you to speak to that. Analogies can be very important in legal argument and the development of the law. I want you to, if you would, just walk us through how the snow globe analogy that you put forward supports reversal in this case. I'm assuming, by the way, that when you say snow globe, the snow globe represents the West Suburban medical system. Is that correct? Yes. If you could speak to that. Yes, I will do that. So it's a self-enclosed world created entirely by West Sub. The people inside that snow globe think they're in its own universe and it's self-enclosed. And I'm just opening up to that analogy in my brief. But the bottom line is parking lot, West Suburban signs. The doors to West Suburban have signs. It is a world created entirely by West Suburban. And because of that, she is in that world. She didn't create the snow globe. And there are no signs or disclaimers or anything elsewhere. Indeed, the very first line of the website in this case says that you are part of our compassionate team from the second you enter our doors. There are no signs. And what I wanted to do, Justice Taylor, was compare the Schroeder versus Northwest Community case from 1999 with the Stelzer case that you released earlier this summer. In the Schroeder case, the informed consent form was confusing. And in Stelzer, it was ironclad. And what we are saying in this snow globe of a world where the hospital knows everything and the patient knows nothing, she should have been given some guideposts for her to know who's who and what's what. And the informed consent form is the last chance for a healthcare provider or a hospital for that matter to explain and disclaim that relationship. And it wasn't done here. And the fact that Dr. Romano has been sitting on the seventh floor of a professional building connected to the hospital in the hospital's complex with no signs whatsoever creates many, many, many facts that we believe warrant the reversal of summary judgment. And if I could just switch the axis for a minute because I understand I'm running out of time. Let's suppose for the sake of argument that West Suburban Hospital and the orthopedics department and Dr. Romano actually found this tumor lurking in Shaina's bones. And let's say they saved her leg and it wasn't lost. I could imagine a warm, fuzzy commercial about the orthopedics team and the compassionate orthopedic surgeons and the whole team at West Sub from radiologists through Dr. Romano touting how they took care of this woman. West Suburban is a comprehensive healthcare system. They need to own their successes and they need to own their failures. And without disclosing anything to Shaina in the informed consent form, I think Dr. Romano and West Sub held him out as an employee. This was his first time with him. She didn't know who he was. We heartily disagree with the trial court's discussion that she chose Dr. Romano. She did not. She was sent there. So she didn't rely on his relationship with West Sub in her decision to choose him as her physician. Wherever her primary care physician referred her, that's where she was going. It had nothing to do with West Sub and that relationship. Isn't that correct? I don't think I agree with that because when I look at what constitutes justifiable reliance, in the York case, the court held that when patients presented a hospital, they seek care from the hospital itself, except for that portion of medical treatment provided by physicians specifically selected by the patient. And if a patient has not selected a specific physician to provide specific treatment, it follows that the patient relies upon the hospital to provide complete care. What about the fact that here the referral even said that Victor Romano, MD, West Suburban Hospital. I think that creates the impression that Dr. Romano is affiliated with West Suburban Hospital, coupled with the fact that she had x-rays there beforehand. And remember, she went to him for a second time. He ordered physical therapy there. He ordered an MRI there. The surgery would have been there. And he never says a word to her. There's nothing in the record that establishes the relationship between her, Dr. Romano, and West Suburban Medical Center. There is no evidence. This form fails. There are cases where there's no explanation at all about the doctor's relationship with the hospital. In summary, judgment was reversed. I point to the Kane v. Dr. Hospital's case. Can you point to the hospital's admission? I think you're kind of repeating. Are there any other questions from the panel? Why don't you summarize? You still have your five minutes. There is no case that I'm aware of that distinguishes between a hospital's consent form and an agent's consent form. I think that is a distinction without a difference. Are you aware of any cases, most of the cases in the apparent agency case law are in the context of inpatient treatment? Ms. Solorzano was not inpatient. She was seen in the professional building. She was just a patient who showed up one day after she got an appointment. Are you aware of any apparent agency cases in that context? I would point to two of them. One is the Yarborough case where the plaintiff went to Erie Health Clinic, a freestanding clinic that had nothing to do with Northwestern Memorial Hospital, wherein the plaintiff claimed that there was an apparent agency relationship. I would also say that the Petrovich case supports our argument as well, that they found an apparent agency relationship between HMOs and doctors. I don't think there's any case that specifically requires that a person be actually admitted to the hospital. In fact, the Yarborough Supreme Court expressly rejected that point. So your argument is there's no distinction to be drawn between inpatient treatment and someone who goes to a doctor based on an appointment. That's what I'm saying. Particularly where here, West Sub, Trumpet itself is a full-service medical center, and everything took place at West Sub. Okay, you answered my question. Thank you. Thank you. Thank you very much. We'll reserve your five minutes. Ms. Green? Yes, good afternoon. May it please the court? Again, I'm Ellen Green for the Applee West Suburban Medical Center. You asked counsel what his strongest point was and strongest argument, and he started out with the consent form. That's also our strongest argument and strongest point. Under Gilbert, if a plaintiff knew or should have known that Dr. Romano was an independent contractor, West Suburban can't be held liable under a theory of apparent agency. The plaintiff only saw Dr. Romano twice. That was in August and September 2016. And both times that she saw him were at his office at Romano Orthopedics in the professional building on the West Suburban campus, if you'll call it. Let's go back. Yes. One of the things we just talked about was in the referral. Yes. It has his name, and it has the hospital, and then for the x-ray, it has the hospital, the entrance. It says the signage says hospital, the doorway, hospital, the buildings on the same campus. And that form, it doesn't say anything to counter the information. What you're saying is we should look at it with a narrow focus? We shouldn't look at all the circumstances surrounding it? Or are you saying something different? Well, you can look at all these circumstances surrounding it. Well, starting with the referral, the referral did not come from West Suburban. So it couldn't be said that this referral was a holding out on the part of West Suburban that they're holding out Victor Romano as their agent. The referral says on it twice, Victor Romano, MD, Victor Romano, MD. It does say West Suburban Medical Center. The fact is that on the website, it says, has been stated, he's been there 30 years. He was head of orthopedics. He was head of staff at the hospital. I mean, they glorify this doctor has had a terrific career, and they tell us everything about what he did for the hospital. There's nothing there. So what? I mean, we have to look at it from an objective standpoint, not subjective, and have to take into account all this, which you can see. We need to look at the complete picture and beginning from the get-go. How else would somebody know to go to him if they didn't put his name down? It doesn't say his office. It says it's his hospital and address. But it had his name on it. And this is the basis for it. But it has to. She was being sent to a particular doctor, not to a practice, but to a doctor. That's exactly right, that she was referred to a specific physician by her primary care physician. And she went there because she had been referred to that specific physician. And that shows that she was not relying on the hospital to provide her care, but she was relying on that. It's not specific reliance. It's an objective test, right? Am I wrong? The law says objective. Yes. Okay. But you're talking subjective. She didn't rely. Yes. That's not the law. So tell me. Exactly. So if she was confused. How is it that when you have a document that doesn't refer at all, you would concede and you do concede. I mean, there is nothing there in that document that would alert anyone that he is solely separate from the hospital. It doesn't even mention it. Nothing in there. And the case law, as you know, Mr. Tanner started back in the early 90s. If he wanted to have the protection of the case law that's developed, it's there. I mean, this is not something that's been hidden all these years. If I may address these points, what's different here is she was not being treated at the hospital. She was at Dr. Romano's private office at Romano Orthopedics. So if she was confused by the referral to Victor Romano and then. That's not a confusion. Hospital today are sectors and they have professional buildings. And just because somebody doesn't have their office in the hospital proper, but in the same entrance in a different elevator bank. Or maybe it's the same. I don't know which the elevator, but it doesn't really matter. It's the fact is, as Mr. Tanner said, I mean, from the get go, when you go into this complex, there is nothing to tell you that he's separate. Everything and the website, the information and the form. No, nothing there would dissuade you from thinking that he's associated with the hospital. In fact, everything says the opposite. There's nothing mentioned on the website pages referring to Dr. Romano by name. There's nothing. There's no address. Whose website? There's some website pages that were attached to their response to the motion for summary judgment. And I would invite the court to look at those pages. There's no mention of Dr. Romano. I know they said something in the reply brief. Dr. Romano, you know, quote, you know, one of our care members or something, but he is not mentioned on the website. The address of the professional. Are you saying that if we take judicial notice of the website today, he's not on there at all? That's today. She was there in 2016. So you're saying in 2016, it wasn't there. There was no reference. I mean, in there, they say that he held a number of positions. Most nobody is chairman of W. S. M. C's orthopedic department. Yes. President President emeritus of W. S. M. C. Medical staff. So you're saying there's nothing in the record to say that that was disclosed on the website in 2016. Correct. The pages of the website that are attached. I have your. Just it's at 2365 through 2369. These were not authenticated. They came from something they got off the Internet called the Wayback Machine, which would not be admissible evidence because they're not authenticated. But if the court is going to look at those things, they're dated in May 2016, December 2014. Before she saw Dr. Romano, they only referenced an address at three Erie Court. They don't mention Dr. Romano by name, even though they say in their reply brief that he's Romano is one of I think they say are compassionate physicians, but he's not mentioned on the website. And even if there was some confusion. And those are considered once she stepped into his private office, she would have been put on notice when she looked at the consent form, which says across the top, all caps, bold Romano orthopedics LLC. And then there's it expressly states, I hear by voluntarily consent to care. Read it. You don't have to read it. Yes, I know. We've seen, but he doesn't mean anything. Most, most people in the public doesn't don't they don't know what LLC. That's what there is. There is no mention of West Suburban. That's his point. So, what you're telling me, we have to decide which way we go, because you both are saying the exact same thing you're saying. He's saying it should have been disclosed you're saying it doesn't need to be disclosed who was it was disclosed was sufficient. Am I right. Here's the other point I'd like to make. There's nothing in the record to suggest that West Suburban had any control over what Dr Romano put in his consent form in his office. So, Miss green, but let me ask you this. Dr Romano is chief of the medical staff. Yes, West Suburban Hospital. I don't know that there's a position. It's any higher for a doctor in any hospital. So, when you say that the hospital has no control. I find that somewhat difficult to accept. The chief of the medical staff presumably is very intimately involved in how medical care is provided. So, could you respond to that. Well, I think the key word you said is presumably. Why do we, you know, we can't presume that if Dr Romano who has his own practice Romano orthopedics and has had for several years or and been at that location for over 20 years that West Suburban could dictate to him. What he should put in his consent form when he's not. Providing care at the hospital would be a whole different story. If they were complaining about something that happened. When he was in the hospital, they, but if he was in the hospital, then they would have provided their own consent. Okay. So, let's look at that council. So, if he had put on the consent form West Romano orthopedics. West Suburban, you're also saying you would have had no control over that if he were holding himself out to be an agent of West Suburban. There could be liability potentially if, if we want understand Gilbert to include the acts of a purported agent as he said, but we would also have to show that West Suburban had knowledge he was holding himself out in that manner. And there's everything that Dr Romano did is consistent with him being an independent contractor with his own private practice. And there's nothing that if they, but that could be true, except that there's so many cases out there. That put doctors on notice, and whether he knew it or not that case law is there. So you're saying we should ignore the case. No, no, but if you look at all the cases, including the 14 cases that he attaches in his appendix in a summary form. These are situations where somebody goes to a hospital and is treated by a hospital by someone, and under Gilbert they say, yeah, you could people are, you know, a reasonable person walks in the hospital and assumes everybody works for the hospital. That's not the situation here. So if that was where the case, then they'd have some obligation to say that the, you know, people may treat you who are independent contractors. But this isn't the situation and there's no case that goes so far as to impose an obligation on a hospital because they have some affiliation with a physician that they can dictate the terms of, you know, what he wears in his office. They were complaining that he was wearing a suit that he, you know, how does West suburban then decide who rent space in the professional building? Can anyone. It's sorry. Well, it's not in the record about. Who was the landlord I know in there. That plan to put in the reply brief on appeal some documents suggesting they own the property. We don't know what the lease says. Is that something they could put in there and if you lease office space from a building, you have to put this in that in your consent form and you have to wear a badge that's has a disclaimer on it. I'm getting to is that everyone that rents in that professional building. Are they affiliated in some way with West suburban. Other than just rental. I cannot speak to that. It's not in the record. So, you know, there may be other doctors that are there may be doctors that aren't that that was not developed in the chalkboard screen. We in deciding this case, obviously have to consider the law and the facts of this case, but we also think about how the law should develop as Mr. And started his argument. When I talked to, you know, communication professionals about the best way to communicate with the public. I'm told that you need to communicate at the fifth grade level. And that's not a criticism of the general public and their education level. It's just a reflection that different people have different levels of education and you need to speak to them in a manner that is clear and simple, and it would be hardly any burden on Dr. Romano to stay in his consent form that You know, I'm not employed by West suburban And you should know that. And so Why should we based on this consent form which says nothing about West suburban or disclaims any relationship. Why Should we hold This consent form against this solar zone. Because your question suggests that West suburban has some degree of control over Dr. Romano. The whole point is he's an independent contractor. He's not their employee. But that's the issue. That's the ultimate issue. So maybe there are questions of fact is what you're saying is Another way to say what you're saying. Yes, there are questions of fact. I mean, you're going to tell me. No, I understand it. But what you're saying is The arguments that I'm hearing is you disagree on, you know, what all these facts mean and you can't what you just said is the ultimate issue is, oh, he's independent, but that's not that's the ultimate issue. No, I think the ultimate issue is that is this consent form. That she signed sufficient to put her on notice that she was being treated by Romano orthopedics. It says it several times. She agreed that she was being treated. I think the issue is actually different under the case law. Right. The issue is whether an objective observer would know taking everything into account as we talked before. And you said, yes, you can take everything into account. That someone would know that he is independent of West Suburban. That's the issue. Well, I don't think it's phrased as terms of that. He's independent of West Suburban. He is on the West Suburban campus. The question is, is he being held out? Who's the care being provided by? Was it is West Suburban doing something to hold him out as though they're providing the care and not Dr. Romano. So she's looking to West Suburban for care. She was referred to the question is whether everything she saw would have alerted her to the fact that. He was not he did not it was not an apparent agent of West Suburban. And in what Miss Tannen says is there's nothing there that says otherwise. And you say there's nothing there. Therefore, she should have assumed that he was independent. It's affirmatively stated in the consent form who's providing the care. He's in his own office. I think we're just going over. Yes, I don't. Yes. So, I mean, I see there's a difference of opinion on how we should go. So you want to finish. Well, I would, again, like to stress that it's the consent form would put a reasonable person on notice as to who is providing the care, even though it's on the campus. There's no case law. And I know that when counsel started with his argument saying this, some sort of organic development, which suggests to me that there's no case that goes this far to make a hospital liable for the negligent acts of anyone on their campus. When they don't even have there's no showing that they have control over what these physicians do in their private offices or what kind of consent forms they have. And she did not. The plaintiff admitted that she went to see Dr. Romano because that's where she was referred that she wasn't looking to West Suburban to provide her care, but she would have gone anywhere that her. The primary care physician directed her. So you're lacking that justifiable reliance element as well. In addition to there really being no holding out. If you don't consider the website, which really shouldn't be considered because that was just some random pages from the Internet slapped on the back of their response to the summary judgment motion. Objection to that evidence in the trial court. I do not believe there was, but that doesn't prevent this court from affirming from any basis that's in the record. And one of the reasons being that there was no evidence of holding out as far as the website's concerned, and the website also did not mention Dr. Romano and it's not the relevant timeframe or we don't know what it was on there on 2016. It also didn't reference the medical professional building. Unlike, I think that William versus to slur case, there was some liability there for holding out where the doctor was mentioned by name. And they also mentioned that this professional building was part of their facility. And that's not the case here. And that would be an unprecedented expense expansion of the apparent agency. Theory of liability to go that far. Just anyone on the campus. Thank you very much. Any other question. So, we would ask, obviously for you to affirm the court starters. Thank you. Thank you. I have five minutes as I understand it. And I will try and speak like a hockey announcer and get all my points across more important that you say them so we understand them rather than rush. First of all, West sub did not move to strike the reference to the 2016 website below, they do it now on appeal. I don't think that's proper. They didn't move to strike Ms. Solar's on those affidavit, which was submitted in our response. I don't think it's proper for them to complain about it now. But in any event, the website was from May of 2016. Mr. Agnofo signed the pleading pursuant to 137. There were not trying to deceive the court. The website specifically says, our mission is to improve the quality of life for every patient who enters our doors, you click to the orthopedics department they talk about our orthopedic team, and our orthopedic specialist at West sub that they might be able to help. It's clear as day. They held him out. And I, I am asking the court I think it'd be very helpful to compare the informed consent form in Schroeder versus Northwest Community Hospital in 1999 where summary judgment was reversed. Justice Taylor's rule 23 order and Stelzer six months ago. You're absolutely right, Justice Hyman. Hospitals have learned what to do to insulate themselves from these claims. And that's why I thought it was not helpful for the hospital to cite the Frisato's case in their summary judgment papers on an appeal and on appeal. There was an ironclad disclaimer of an acknowledgement of no reliance, plus the hospital put signs in the lobby. And I agree with what Justice Taylor said that signs help and signs are important, and people need guidance, and she got none. I'm giving away my age here there's that song from the 70s sign signs everywhere there signs. Don't do this, don't do that. Can't you read the sign. If they had signs, if there was a form. We would not be here. But there weren't, she was given zero guidance. Let me ask. It seems to me that the argument being made by Miss Green is that we are being asked to tread new ground that this is to expand the law that there is no precedent for what we are doing. And you're asking us to move the law in a different direction. Wrong or right. I think she's wrong. And that's why I started my argument with the way a parent agency law has developed over time. And I think on the continuum of Gilbert and Petrovich on one end of the continuum and Yarborough on the other, we are much closer to Gilbert and HMOs than we are to a federally funded health clinic. I just for them to cite that case and their reply in support. I don't understand it. This is a doctor who's been firmly ensconced in the seventh floor of the professional building for 32 years. Everything was done at West sub. He, everyone made money every step along the way. They, if there would have been a success they would have puffed his this wonderful story about how they save this woman's leg. They didn't, they need to own their successes and their failures. This is not a wild expansion of the law. That's all speculation as regards to what they might do. That case is not going to make a bit of difference in our decision. Well, my point is, this is not a wild expansion of the law. This is a natural progression of the common law based on Gilbert. But you're, you're agreed then we are traveling on new ground. It may be a progression, but you're saying there is what Ms. Green says is there's no case on point. I've, I've not found a specific case on point. However, I do point to Yarborough, which said that, which absolutely rejected Northwestern's argument that a parent agency has to be confined to the hospital. They rejected that argument and Petrovich wasn't even a hospital. It was an HMO. So I think a guy who's a chief of staff who's been in the medical building for 30 years. I think it's much closer to traditional apparent agency principles. Otherwise, it'd be a gigantic gaping hole in apparent agency theory that doctors and professional buildings with close ties to the hospital have no duty to disclose, nor do the hospitals. So we ask for reversal. We ask that we be able to prove our case. There are questions of facts swirling about every element of apparent agency. Shana and I and Mr. Kelly are grateful for your time. And thank you for this very interesting discussion. And I'll answer any questions anyone has. Anybody have any other questions. I want to thank both of you very much. Your briefs were engaging. Your arguments are engaging. And so now we're engaged as we have been going through this. A lot to read and a lot to take in and appreciate very much. Excellent job to both of you. Thank you very much. Have a good afternoon.